## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:

TIMOTHY L. COOK,

      Debtor.

Case No.   2:23-cv-1521

COMPLAINT-CLASS ACTION

TIMOTHY L. COOK,

      Plaintiff,

      v.

SANTANDER CONSUMER, USA, INC,

      Defendant.

## CLASS ACTION COMPLAINT

Timothy L. Cook, through his undersigned counsel, hereby files this Class Action Complaint on behalf of himself and similarly situated borrowers of Santander Consumer, USA, Inc., as follows:

### Jurisdiction, Venue and Statutory Basis

1.    This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1332(a) (diversity jurisdiction).

2.    Venue is appropriate in this Court under 28 U.S.C. § 1391(a).

3.    The statutory bases for this Complaint are 11 U.S.C. §§ 105(a); 524; 12 Pa.C.S. § 6309; 13 Pa. C.S. §§ 9610-9614, 9616, and 9625-9627.

4.    Consistent with LCvR 23(A)(2), a "Class Action Statement" accompanies this Complaint as *Exhibit A*.

## The Parties

5.    Plaintiff, Timothy L. Cook ("***Mr. Cook***") is a natural person residing at 1059 Rural Ridge Drive in Cheswick, Pennsylvania 15024-2439.

6.    Defendant, Santander Consumer, USA, Inc. ("***Santander***") is a nationally chartered bank that provides vehicle financing and third-party loan servicing to more than 2.9 million consumer borrowers.  Santander is headquartered at 1601 Elm Street in Dallas, Texas 75201.

## Jurisdiction and Venue

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2).  The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Mr. Cook and Santander are citizens of different states.

8.    This action is based on injuries, damages, and/or harm, which arose out of the activities engaged in by the Defendant within the Commonwealth of Pennsylvania and affecting its citizens.  The Defendant regularly conducts and/or solicits business in and/or derives substantial revenue from its business activities and services that it provides to consumers in Pennsylvania.

9.    Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the claims against the Defendants occurred in Pennsylvania.

## PLAINTIFF'S ALLEGATIONS

10.    Mr. Cook filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on October 30, 2015.  *In re: Cook*, Bankr. W.D. Pa., case no. 15-23998-CMB.

11.    Chapter 13 bankruptcy provides a pathway for individual debtors to reorganize their financial affairs by making payments to their creditors over a period of three to five years.  11 USC § 1322(d).  Debtors' chapter 13 plan payments are channeled through a chapter 13 trustee, who is

responsible for making periodic distributions to creditors in accordance with the provisions of debtors' chapter 13 plans.  11 U.S.C. § 1326.

12.    Shortly after Mr. Cook filed his chapter 13 case, his vehicle broke down and required engine repair that would have cost more than the vehicle was worth.  But, as a debtor in a chapter 13 bankruptcy, Mr. Cook needed court approval for any car loan.  11 U.S.C. § 364.

13.    On May 5, 2016, the Bankruptcy Court granted Mr. Cook's motion and permitted him to finance the purchase of a replacement vehicle for an amount not to exceed $25,000, with monthly debt service payments not exceeding $450.

14.    On September 9, 2016, Mr. Cook financed the purchase of a 2012 Chevrolet Equinox with a vehicle identification number of 2GNFLCEKXC6243010 (the "*Vehicle*") from Pittsburgh East Nissan Inc. at 3355 William Penn Highway in Pittsburgh, Pennsylvania 15235, as memorialized through a Retail Installment Sales Contract Simple Finance Charge ("*RISC*").

15.    Pursuant to the provisions RISC, Pittsburgh East Nissan immediately assigned its interest in the RISC to Santander.

16.    Mr. Cook made debt service payments directly to Santander until the Bankruptcy Court confirmed his amended chapter 13 plan and the trustee overtook the monthly payments.

17.    Mr. Cook's monthly debt service payment was to have been $399.51, but when Mr. Cook made direct payments to Santander, the bank charged him $411, which is $11.49 more than the payment fixed in the RISC (the "*Improper Fees*").

18.    Under the RISC, the late payment charge was fixed at 2% (*i.e.*, the maximum late fee permitted for payments fewer than 10 days late under 12 Pa.C.S. § 6245(b)(1)).

19.    Thus, pursuant to the RISC and applicable law, the late fee could not have exceeded $7.99 (*i.e.*, 2% of $399.51).

20.     Upon information and belief, Santander routinely imposed late fees greater than 2% on payments that made fewer than 10 days past their due dates, in violation of 12 Pa. C.S. § 6245(b).  For instance (i) it imposed a late fee to Mr. Cook's payment in December 2016 that had only been three days late; (ii) in January 2017 for a one-day late payment; and (iii) again in March 2017 for a payment that had only been four days past due.

21.     Upon information and belief, Santander improperly charged a payment processing fee, which exceeded the amount of any expense Santander incurred for processing payments.  In so doing, Santander violated 12 Pa. C.S. § 6245, which prohibits charging expenses greater than those it actually incurred.

22.     On June 20, 2019, nearly three years after it accepted assignment of the RISC, Santander filed a proof of claim (the "*POC*") in Mr. Cook's chapter 13 bankruptcy case.  A copy of that POC, which includes a copy of the RISC, is attached hereto as *Exhibit B*.

23.     The POC is the only written information regarding his loan account that Santander has ever supplied to Mr. Cook or his attorneys.

24.     According to the POC, Mr. Cook was to make payments totaling $29,764.72 for a Vehicle that Santander knew had been worth only $15,775.  *Id.* at pp. 2, 5.

25.     Santander's gave an inaccurate description of the loan account in its POC.[1]  For instance:

(i)     *Failure to Credit Payments.*  Although Mr. Cook (directly and through the chapter 13 trustee) had made numerous payments on the Vehicle by the time Santander submitted its claim on June 20, 2019 (*i.e.*, nearly three years after the original purchase date), Santander claimed that Mr. Cook had owed $17,437.68—*i.e.*, an amount exceeding the entire original principal balance of the loan.  *Exh. B*, p. 2.

---

[1]  The analysis of Santander's POC is provided here to demonstrate the bank's improper accounting and violations of statutes set forth elsewhere in this Complaint.  It is <u>not</u> intended as an objection or challenge to the POC itself.

(ii) *False Declaration Under Penalty of Perjury.* Despite its failure to credit the account with the payments that Mr. Cook made directly and through his chapter 13 plan, Santander's "Bankruptcy Representative" declared that that "when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt." *Id.* at 3.

(iii) *False Interest Calculation.* According to Santander, Mr. Cook had not reduced the principal balance but $11.79 of interest had become due. But that amount of interest would not have been possible under the RISC. *Id.* at 4. (To illustrate that fact, at an annual interest rate of 18.21%, the daily interest on the original principal balance would have been $8.69 and the interest component of the first monthly debt service payment was $264.44.)

(iv) *False Statement of the Extent of Its Secured Interest.* After acknowledging that the value of the Vehicle was only $15,775, it falsely claimed that no portion of its $17,437.68 claim was unsecured. As shown in the images below drawn from the POC, Santander ignored the checksum instruction to falsely overvalue its secured claim. *Id.* at 2.

**7.  How much is the claim?**  $17,437.68

| | |
|---|---|
| Value of property: | $15,775.00 |
| Amount of the claim that is secured: | $17,437.68 |
| Amount of the claim that is unsecured: | $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.) |

(v) *Incorrect Statement of Filing Date.* As reprinted below, in its "Payoff Itemization" attachment, Santander alleged a filing date of October 30, 2015—*i.e.*, almost a year <u>before</u> Mr. Cook purchased his Vehicle. *Id.* at 4.

### Payoff Itemization

**Filing Date:** 10/30/2015

| | |
|---|---|
| Total Principal: | $17,425.89 |
| Total Interest: | $11.79 |
| Total Extension Fees: | $ 0.00 |
| Total Late Fees: | $ 0.00 |
| Total NSF Fees: | $ 0.00 |
| Total Legal Fees: | $ 0.00 |
| Total Repo Fees: | $ 0.00 |
| **Payoff** | **$17,437.68** |

26.    Mr. Cook diligently made all the payments required under his chapter 13 plan and, on February 22, 2022, the Bankruptcy Court awarded him a discharge pursuant to 11 U.S.C. § 1328(a) (the "***Discharge Order***"). A copy of the Discharge Order, with its certificate of mailing from the Bankruptcy Notification Center to Santander, is attached hereto as *Exhibit C*.

27.     While section 524(a) of Bankruptcy Code prohibits creditors from attempting to collect discharged debts, the discharge of a debt does not affect a creditor's lien rights. The creditor may be barred from attempting to collect directly from a discharged borrower, but its *in rem* default remedies would remain intact.

28.     In those circumstances, secured creditors routinely issue invoices and billing statements to debtors who have been awarded a discharge, but which debtors' vehicles continue to secure such secured the creditors' claims. Typically, such invoices and statements incorporate notices to borrowers that they are being provided for informational purposes and should not be construed as attempts to collect a debt.

29.     In any event, Mr. Cook's liability to Santander did not fall within the ambit of his discharge because he purchased the Vehicle during the pendency of his chapter 13 case, with court approval. *See* 11 U.S.C. § 1328(a)(1).

30.     Nevertheless, Santander has never sent any invoices, statements, or account records to Mr. Cook.

31.     Mr. Cook's chapter 13 bankruptcy case closed on March 10, 2022.

32.     On or about July 19, 2022, without any notice, Santander repossessed Mr. Cook's Vehicle.

33.     At the time of repossession, Mr. Cook had made payments on the Vehicle of at least $15,441.48 ($3,469.41 in direct payments and $11,972.07 through the chapter 13 trustee)—*i.e.*, approximately 98% of the $15,775.00 value of the Vehicle.

34.     When Santander repossessed his Vehicle, Mr. Cook had valuable personal property stored in it, including newly purchased automotive parts (the "***Personal Property***").

6

35.    After Santander repossessed the Vehicle, Mr. Cook's counsel undertook considerable efforts to recover his Vehicle and Personal Property.

36.    Santander improperly retained Mr. Cook's Vehicle and his Personal Property as a stratagem to compel him to execute a release of his claims against the bank.

37.    Upon information and belief, as of the date of filing of this Complaint, Santander has sold Mr. Cook's Vehicle.

38.    Upon information and belief, Santander recovered a surplus from its sale of Mr. Cook's Vehicle.

39.    As of the date of filing of this Complaint, Santander has failed to issue any notice regarding Mr. Cook's rights of redemption or reinstatement.

40.    As of the date of filing of this Complaint, Santander has failed to issue any notification of disposition of collateral.

41.    As of the date of filing of this Complaint, Santander has failed to pay Mr. Cook the surplus proceeds from the sale of his Vehicle.

42.    Throughout its dealings with Mr. Cook, Santander failed to reasonably communicate with him regarding his loan account, and the limited information it gave was inaccurate and/or misleading.  For instance:

> (i)    *Loan Payment Status*.  Beginning with its POC, which Santander filed nearly three years into the term of the loan, when Mr. Cook and/or the chapter 13 trustee had tendered every debt service payment that had come due—Santander failed to acknowledge the receipt or application of any of those payments. *Exh. B*, pp. 2, 5.  In fact, Santander has yet to supply Mr. Cook with any documentation of its receipt and application of debt service payments.

> (ii)    *Interest Calculation*.  Santander claimed in its POC that, as of October 30, 2015, $11.79 of interest was due on the account.  However, the loan did not originate until nearly a year later, on October 9, 2016.  Moreover, Santander's interest calculation is inconsistent with the financial terms of the RISC.  The interest component of the first scheduled debt service

payment would have been $264.44, and the scheduled interest on the declining balance for the payment scheduled in the month when Santander filed its POC would have been $184.06.

(iii)    *Excessive and/or Improper Fees*.  Santander imposed Improper Fees that exceeded any fees disclosed in the RISC, and it sough reimbursement of expenses in excess of the expenses it actually incurred.

(iv)    *Extent of Secured Interest*.  While Santander acknowledged that the Vehicle had only been worth $15,775.00, it nevertheless insisted that its $17,437.68 claim had been fully secured by its collateral.  *Id.* at 2.

(v)    *Location of Vehicle and Personal Property*.  Santander has not revealed the location of the Vehicle or Personal Property to Mr. Cook.

(vi)    *Return of Vehicle*.  While Santander initially had agreed to return the Vehicle to Mr. Cook, it later refused to do so unless Mr. Cook agreed to release the bank and its repossession broker.  A copy of Santander's proposed release is attached hereto as *Exhibit D*.

(vii)    *Identity of Repossession Broker*.  Initially, Mr. Cook and his counsel spoke with an employee of United Auto Delivery and Recovery, Inc. (headquartered in Collierville, Tennessee) but Santander later sought a release for International Recovery Systems (headquartered in Kennett Square, Pennsylvania).  Creating further confusion, Santander's proposed release shows that International Recovery Systems' client was United Recovery and Remarketing (in Collierville, Tennessee) and the lien holder is identified as "Santander Tier 2."  *Exh. D*, p. 7.

## CLASS ALLEGATIONS

43.    Santander's conduct surrounding its repossessions of the vehicles from consumer borrowers violated the following statutes:

(i)    Pennsylvania's Fair Credit Extension Uniformity Act ("***FCEUA***") (and its enforcement vehicle, the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. §§ 201-1, *et seq.* (the "***UTPCPL***"));

(ii)    Pennsylvania's Uniform Commercial Code ("***UCC***"), 13 Pa.C.S. §§ 1101, *et seq.*, independently, and *in pari materia* with Pennsylvania's Motor Vehicle Sales Finance Act, 13 Pa.C.S. §§ 6101, *et seq.* ("***MVSFA***")[2]

---

[2]  In 2014, the MVSFA was repealed and recodified in Chapter 62 of Title 12 of Pennsylvania Consolidated Statutes (formerly, the statute existed in Chapter 7 of Title 69 of Purdon' s Pennsylvania Statutes).  The Plaintiff is <u>not</u> asserting a private right of action under the MVSFA. Rather, all MVSFA-related claims herein are claims under the UCC, independently or *in pari materia* with the MVSFA.

(iii)    the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* ("**Bankruptcy Code**").

## Standards of Care Abdicated

44.    Secured parties affecting non-judicial repossessions have heightened obligations, including:

(i)    ***Duty of Good Faith.***  The obligation of good faith in its performance and enforcement of the RISC, imposed under 13 Pa. C.S.A. § 1304.  The UCC defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing."  13 Pa.C.S. § 1201(b)(20) (definition incorporated into Article 9 through 13 Pa.C.S. § 9102(c)).

(ii)    ***Duty of Commercial Reasonableness.***  "Every aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable." 13 Pa. C.S.A. § 9610(b).  Moreover, "general principles of law and equity shall supplement" the UCC's standard of commercial reasonableness.  *Cont'l Ins. Co. v. Schneider, Inc.*, 873 A.2d 1286, 1290 (Pa. 2005).

(iii)    ***Fiduciary Duty.***  "A fiduciary duty is the highest duty implied by law.  A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests, including a duty to disclose all relevant information." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819-20 (Pa. 2017); *Solfanelli v. CoreStates Bank N.A*., 203 F.3d 197, 200 (3d Cir. 2000) ("in liquidating the collateral, the creditor acts as the debtor's fiduciary") *citing U. S. A. ex rel Small Bus. Admin. v. Chatlin's Dep't Store, Inc.*, 506 F. Supp. 108, 111 (E.D. Pa. 1980).

45.    Through its dealings with the Plaintiff and other similarly situated borrowers, Santander violated each of the aforementioned standards of care.

## Doctrine of *In Pari Materia*

46.    Pennsylvania's General Assembly has unambiguously instructed courts that, in every instance where two statutes relate to the same thing, those statutes must be construed together as the same statute (except when impossible).   "Statutes in *pari materia* shall be construed together, if possible, as one statute." 1 Pa. C.S. § 1932(b) (emphasis added); 1 Pa. C. S. § 1932(a)

("Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things.").

47.    The MVSFA provides the notice requirements for secured parties who repossess collateral through means other than legal process. The UCC[3] sets forth requirements for those very same notices. Therefore, the UCC and MVSFA indubitably relate to the same persons, things and/or to the same class of persons or things (specifically, borrowers whose vehicles were repossessed without judicial process).

48.    As a secured creditor electing to exercise self-help by repossessing motor vehicles, Santander, is and was required to comply with both (i) the UCC, independently; and (ii) the UCC in *pari materia* with the MVSFA. *Indus. Valley Bank & Tr. Co. v. Nash*, 502 A.2d 1254, 1263 (Pa. Super. 1985) ("the MVSFA and the U.C.C. are clearly in *pari materia* since they relate to the identical thing -- the sale of a repossessed motor vehicle.").

**Violations Arising from Santander's**
**Conduct BEFORE Repossession**

49.    Santander repossessed vehicles without communicating with its borrowers in violation of the FCEUA provision that "[a] creditor may not use unfair or unconscionable means to collect or attempt to collect any debt. 73 Pa. Stat. Ann. § 2270.4(b).

50.    Santander regularly repossessed vehicles from its borrowers without first communicating with them in violation of the UCC requirement that "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable." 13 Pa.C.S. § 9610(b).

---

[3] Consistently, an official comment to the Uniform Commercial Code explains that "courts should construe" UCC provisions relating to the disposition of collateral after a default "harmoniously," (*i.e.*, *in pari materia*) with other laws dealing with post-default disposition of collateral. U.C.C. § 9-620 (Am. Law Inst. & Unif. Law Comm'n amended 2010), cmt. 9.

51.    Santander's systematic failure to comply with the laws governing its conduct in communicating with its borrowers, crediting payments, imposing charges and interest, and policing its vehicle loans constituted commercially unreasonable aspects of its disposition of collateral.  13 Pa.C.S. § 9610(b).

52.    Upon information and belief, Santander systematically imposed late fees upon its borrowers when their debt service payments were fewer than 10 days late, in violation of 12 Pa.C.S. § 6245(b).

53.    Upon information and belief, Santander engaged in a pattern and practice of improperly imposing a payment processing fee, which exceeded the amount of any expense it incurred for processing payments.  In so doing, Santander violated 12 Pa. C.S. § 6245, which prohibits charging expenses greater than those it actually incurred or expected to incur.

54.    Santander's systematic, premature imposition of late fees in violation of the law constituted a commercially unreasonable aspect of its disposition of borrowers' vehicles.   13 Pa.C.S. § 9610(b).

55.    Santander systematically, imposed other illegal fees (including fees imposed for processing payments) in amounts greater than it actually incurred or expected to incur, in violation of 12 Pa.C.S. § 6242(d).

56.    Santander's illegal collection of inflated expenses constituted a commercially unreasonable aspect of its subsequent disposition of borrowers' vehicles.  13 Pa.C.S. § 9610(b).

57.    Santander's failure to credit payments from its borrowers in bankruptcy cases violated the Bankruptcy Code provision that:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required

by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i).

58.     Because Santander violated the Bankruptcy Code by failing to apply its borrowers' payments during their bankruptcy cases, its dispositions of their vehicles was commercially unreasonable.  13 Pa.C.S. § 9610(b).

59.     Further, Santander systematically failed to accurately compute the interest components of borrowers' loans, rendering its dispositions of their vehicles commercially unreasonable.  13 Pa.C.S. § 9610(b).

### Violations Arising from Santander's
### Failure to Supply Notices AFTER Repossession

60.     Consistent with its pattern and practice, after Santander repossessed borrowers' vehicles, it failed to issue written notices of repossession, despite its clear obligation to do so under the UCC.  13 Pa.C.S. § 9611(b) ("Except as otherwise provided in subsection (d), a secured party that disposes of collateral under section 9610 (relating to disposition of collateral after default) shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition.").

61.     Additionally, the same conduct violated the UCC *in pari materia* with the MVSFA. 12 Pa.C.S. § 6254(a) ("If repossession of a motor vehicle subject to an installment sale contract is effected other than by legal process, the holder shall immediately furnish the buyer with a written notice of repossession.").

62.     Thus, Santander violated the UCC and the UCC *in pari materia* with the MVSFA for its failure to issue notices to its borrowers after selling their vehicles.

**Violations Arising from Santander's**
**Repossession and Retention of Personal Property**

63.    Santander violated the requirement of the UCC by failing to notify its borrowers where their vehicles were located, which would permit them to recover their personal property.

64.    Santander violated the UCC *in pari materia* with the MVSFA by failing to notify them of the location of their vehicles and personal property, and to state that any personal property left in the repossessed vehicles would be held for 30 days from the date of the mailing of the notice. 12 Pa. C.S. § 6254(c); 13 Pa. C.S. §§ 9613(1), 9611(b).

**Violations Arising from Santander's**
**Imposition of Improper Fees**

65.    By imposing Improper Fees upon its borrowers' payments, Santander violated the UCC directly and *in pari materia* with the MVSFA.

66.    Under applicable law, Santander is not permitted to charge late fees for payments made within 10 days of their scheduled due dates in amounts more than 2% of the amounts of the tardy payment (or, for heavy duty commercial vehicles, 4%). 12 Pa.C.S. § 6245(b).

67.    Nevertheless, Santander systematically imposed late fees upon its borrowers in amounts greater than permitted for payments made within 10 days of their scheduled due dates.

68.    Santander was prohibited from charging expenses in amounts greater than it actually incurred or expected to incur. 12 Pa.C.S. § 6245(b).

69.    But Santander systematically charged its borrowers for expenses at amounts greater than it actually incurred or expected to incur. For instance, upon information and belief, Santander charged $3.50 as a payment processing fee, but the bank's payment processing expenses (if any) were substantially less than $3.50.

70.    Through the foregoing conduct, Santander violated its Duty of Good Faith, Duty of Commercial Reasonableness, and Fiduciary Duty.

## DAMAGES

71.    The UTPCL provides a remedy for Wells Fargo's violations of the FCEUA. Specifically, the UTPCL provides that:

> Any person who …suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful… may bring a **private action to recover actual damages or one hundred dollars ($ 100)**, whichever is greater. The **court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($ 100)**, and may provide such additional relief as it deems necessary or proper. **The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.**

73 P.S. § 201-9.2(a) (emphasis added).

72.    The UCC allows consumer borrowers to recover statutory damages of not less than the credit service charge (the "Finance Charge" component of the Schumer Box) plus 10% of the principal amount of the obligation ("Amount Financed" component of the Schumer Box). 13 Pa. C.S.A. § 9625(c)(2).   These figures are readily determinable from the Schumer Box of each relevant RISC.

73.    Importantly, those statutory damages are intended to establish a secured party's liability for violations of, *inter alia,* the notice provisions in consumer goods transactions, irrespective of whether "actual damages" are greater, lesser, or nonexistent.   An Official comment to the UCC explains this dynamic:

> 4. **Minimum Damages in Consumer-Goods Transactions.**
> Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a

> consumer-goods transaction results in liability, ***regardless of any injury that may have resulted.***

UCC 9-625(c)(2), cmt. 4.

74.    Section 9625(e)(5) provides for $500 in statutory damages for each instance in which Santander failed to issue a post-sale notice to its borrowers.

75.    Plaintiffs further seek the extinguishment of all Class Members' deficiency balances on the subject vehicle loan accounts pursuant to *Savoy*[4] and because those deficiency balances arose from failure to credit payments, and imposition of improper charges, excessive interest, and/or unincurred expenses.  The Plaintiff also seeks injunctive and declaratory relief as expressly permitted by 13 Pa. C.S. § 9625(a).

## CLASS CERTIFICATION

76.    Mr. Cook brings this class action lawsuit on behalf of himself and other similarly situated persons, pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3).  Because of the nature of the claims involved, the Plaintiff has proposed the following five distinct classes, which are described in greater detail, *infra*:  (i) the Repossession Notice Class; (ii) the Bankruptcy Class; (iii) the Personal Property Class; (iv) the Sale Notice Class; and (v) the Improper Fees Class.

77.    Mr. Cook is a member of each of the five proposed classes of plaintiffs.  However, unnamed plaintiffs could be members of one or more those classes.

78.    **The "*Repossession Notice Class.*"**  For purposes of this action, the Repossession Notice Class, shall consist of:

---

[4] A secured creditor's failure to conduct itself in a commercially reasonable manner while servicing a vehicle loan gives rise to a presumption that the value of the vehicle collateral is precisely equal to the indebtedness it secures. Based on that presumption, the sale of the vehicle would entirely extinguish the indebtedness, because by definition, no deficiency could result. *Savoy v. Beneficial Consumer Discount Co.,* 503 Pa. 74, 78 (1983). See also, *Cubler,* supra.

a.    all persons who purchased a motor vehicle primarily for personal, family, or household use; and

b.    who entered into retail installment sales contracts for the purchase of such motor vehicles under which Santander became the secured party; and

c.    who within six years prior to the filing of this action through the date of class certification, had such motor vehicles repossessed by Santander or at the direction of Santander within the Commonwealth of Pennsylvania; and

d.    to whom Santander failed to issue notifications of disposition of collateral pursuant to 13 Pa. C.S. § 9611(b) and 12 Pa.C.S. § 6254.

79.    The "*Bankruptcy Class.*"  For purposes of this action, the Bankruptcy Class shall consist of:

a.    all persons who purchased a motor vehicle primarily for personal, family, or household use; and

b.    who entered into retail installment sales contracts for the purchase of such motor vehicles under which Santander became the secured party; and

c.    who within six years prior to the filing of this action through the date of class certification, were debtors in cases under the Bankruptcy Code pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania, the United States Bankruptcy Court for the Middle District of Pennsylvania, or the United States Bankruptcy Court for the Western District of Pennsylvania; and

d.    to whom Santander failed to:

(i)    provide information concerning the status of their loan accounts; or

(ii)    provide notice of any alleged payment delinquency or other alleged defaults of their loan agreements; or

(iii)    provide any notice that it intended to repossess such members' motor vehicles; or

(iv)    supply accurate information concerning the account status of their loans.

80.    The "*Personal Property Class.*"  For purposes of this action, the Personal Property Class shall consist of:

a.      all persons who purchased a motor vehicle primarily for personal, family, or household use; and

b.      who entered into retail installment sales contracts for the purchase of such motor vehicles under which Santander became the secured party; and

c.      who within six years prior to the filing of this action through the date of class certification, had such motor vehicles repossessed by Santander or at the direction of Santander within the Commonwealth of Pennsylvania; and

d.      to whom Santander failed to:

(i)      provide notices regarding such personal property, as required under 12 Pa. C.S. §§ 6254; 6255; and 13 Pa. C.S. 9610(b);

(ii)     meet its obligation to safeguard such personal property; or

(iii)    return to such personal property.

81.     **The "*Sale Notice Class.*"**  For purposes of this action, the Sale Notice Class, shall consist of:

a.      all persons who purchased a motor vehicle primarily for personal, family, or household use; and

b.      who entered into retail installment sales contracts for the purchase of such motor vehicles under which Santander became the secured party; and

c.      who within six years prior to the filing of this action through the date of class certification, had such motor vehicles repossessed by Santander or at the direction of Santander within the Commonwealth of Pennsylvania; and

d.      to whom Santander failed to send a Sale Notice via Certified Mail or personal delivery to their Pennsylvania residence, after a disposition sale of their vehicle.

82.     **The "*Improper Fees Class.*"**  For purposes of this action, the Improper Fees Class shall consist of:

a.      all persons who purchased a motor vehicle primarily for personal, family, or household use; and

b.      who entered into retail installment sales contracts for the purchase of such motor vehicles under which Santander became the secured party; and

c.      to whom Santander:

(i)     imposed interest charges in excess of the interest charges permitted under 12 Pa.C.S. § 6245 *in pari materia* with 13 Pa. C.S. § 9611(b) or in excess of the amount set out in the RISC, at time when such person was a resident or domiciliary of Pennsylvania; or

(ii)    charged expenses in excess of the actual amount Santander incurred, at time when such person was a resident or domiciliary of Pennsylvania.

83.    This action was properly commenced and should be maintained as a class action against the Defendant because there is a well-defined community of interest in the litigation and the proposed class and subclasses are readily ascertainable from Santander's business records.

84.    Mr. Cook's claims are typical of the claims of others in (i) the Repossession Notice Class; (ii) the Bankruptcy Class; (iii) the Personal Property Class; (iv) the Sale Notice Class; and (v) the Improper Fees Class.  All are based on the same factual and legal theories.  All class members financed automobiles through Santander and pledged their vehicles as collateral. Santander failed to issue a notification of disposition of collateral to all of them.

85.    Upon information and belief, the members of the proposed classes are so numerous that joinder of all members is impracticable.

86.    There are questions of law and/or fact that are common to the claims of the members of the proposed classes.

87.    The claims and/or defenses of Mr. Cook are typical of those of the members of the proposed classes.

88.    Mr. Cook will fairly and adequately protect the interests of the members of the proposed classes.

89.    Requiring the individual members of the proposed classes to prosecute separate actions, would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.  Moreover, the prosecution of several separate actions by the members of the classes would

create a risk of inconsistent or varying adjudications. A class action will serve the goals of judicial economy and ensure uniformity of decision.

90.    Further, questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**CAUSES OF ACTION**

**COUNT I**
**Repossession Notice Class v. Santander**
*Failure to Provide Notice of Repossession*
**Uniform Commercial Code**
**13 Pa.C.S. § 9625**

91.    The preceding paragraphs are incorporated by reference.

92.    The cause of action asserted in this Count are brought on behalf of the Main Class.

93.    Pennsylvania's enactment of the Uniform Commercial Code (the "*UCC*") requires lenders repossessing vehicles from consumer borrowers to issue notices of repossession.   13 Pa.C.S. §§ 9611(b).

94.    As with the UCC, Pennsylvania's Motor Vehicle Sales Finance law (the "*MVSFA*") "relates to motor vehicle sales finance."  12 Pa.C.S. § 6201.  Pennsylvania law requires that the UCC and MVSFA be read *in pari materia*.  1 Pa. C.S. § 1932(a) ("Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things"); 1 Pa. C.S. § 1932(b) ("Statutes in pari materia shall be construed together, if possible, as one statute"); *see also* UCC § 9-620, cmt. 9 ("State legislature should conform those laws so that they mesh with the section and Section 9-610 and courts should construe those laws and this section harmoniously.  A secured party's acceptance of collateral in the possession of the debtor may implicate statutes dealing with a seller's retention of the possession of goods sold.").

95.     In addition to the notice requirements of the UCC, the MVSFA imposes the requirement that a repossessing lender "immediately furnish the buyer with written notice of repossession."  12 Pa.C.S. § 6254(a) (emphasis added).

96.     Further, the MVSFA requires that notices of repossession "be delivered in person or sent by registered or certified mail to the last known address of the buyer."  12 Pa.C.S. § 6254(b).

97.     Santander violated the UCC and MVSFA by failing to issue any notices of repossession to Mr. Cook and the members of the Repossession Notice Class.

98.     Santander further violated the UCC and MVSFA by failing to issue repossession notices by in-person delivery, or by registered or certified mail.

99.     While the MVSFA does not give rise to a private right of action, the UCC provides the remedy for MVSFA violations.  1 Pa. C.S. § 1932(b).

100.     In the context of Santander's repossessions of Mr. Cook's vehicle and its repossession of the vehicles of the other members of the Repossession Notice Class, the UCC provides for statutory damages for Santander's failure to issue repossession notices in accordance with the following formula:

> an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price.

13 Pa.C.S. § 9625(c)(2).

101.     Thus, Santander is liable for statutory damages to Mr. Cook and the members of the Repossession Notice Class, under section 9625(c)(2) of the UCC.

## COUNT II
### Bankruptcy Class v. Santander
### *Failure to Provide Account Information and Notice of Repossession and Plan to Sell*
### Unfair Trade Practices and Consumer Protection Law
### 73 Pa.C.S.A. §§ 201-1, *et seq.*

102.    The preceding paragraphs are incorporated by reference.

103.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A.

§§ 201-1, *et seq.* (the "*UTPCPL*") apply to Santander's herein described conduct.

104.    Section 201-3 of the UTPCPL provides, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act are hereby declared unlawful….

73 Pa. Stat. Ann. § 201-3(a).

105.    In turn, the referenced section 2 of UTPCPL provides, in relevant part, that

> "Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following:
>
> …Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 Pa. Stat. Ann. § 201-2(4)(xxi).

106.    Santander has engaged in a pattern or practice of filing inaccurate and misleading information regarding its claims in the bankruptcy cases of the members of the Bankruptcy Class. In so doing, Santander has engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding.

107.    Santander has engaged in a pattern or practice of refusing to supply any account information, invoices, or billing statements to Mr. Cook and the members of the Bankruptcy Class, leaving those members with no indication that any payments had been due, overdue, or delinquent.

In so doing, Santander has engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding.

108.    Santander has engaged in a pattern or practice of refusing to supply any repossession notices to Mr. Cook and the members of the Bankruptcy Class, leaving them without the ability to exercise any recover their vehicles through reinstatement, redemption, or other available means.  In so doing, Santander has engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding.

109.    Thus, Santander is liable for statutory damages to the Plaintiffs, under section 201-9.2 of the UTPCPL, which provides, in relevant part:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 Pa. Stat. Ann. § 201-9.2(a).

110.    Moreover, Santander had been required to credit payments from its borrowers in chapter 13 bankruptcy cases, which it systematically failed to do.  11 U.S.C. § 524(i).

111.    Santander's failure to credit those payments constituted a commercially unreasonable aspect of its disposition of borrowers' vehicles.

**COUNT III**
**Personal Property Class v. Santander**
*Failure to Provide Personal Property Notice*
**Uniform Commercial Code**
**13 Pa.C.S. § 9625**

112. The preceding paragraphs are incorporated by reference.

113. In Pennsylvania, borrowers whose vehicles are repossessed have the right to reclaim their personal property within 30 days of lenders' notices of repossession. 12 Pa.C.S. § 6255.

114. A repossessing creditor is required to provide a "statement that any personal property left in the repossessed vehicle will be held for 30 days from the date of the mailing of the notice" in its notice of repossession. 12 Pa.C.S. § 6254(c)(6).

115. Santander failed to supply any repossession notice to Mr. Cook and the members of the Personal Property Class and, *a fortiori*, Santander failed to supply them with the particular notice regarding their personal property.

116. In the context of Santander's failed to supply any repossession notice to Mr. Cook and the members of the Personal Property Class, the UCC provides for statutory damages for Santander's failure to issue repossession notices in accordance with the following formula:

> an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price.

13 Pa.C.S. § 9625(c)(2); 1 Pa. C.S. § 1932(b); and 12 Pa.C.S. § 6254(c)(6).

117. Thus, Santander is liable for statutory damages to Mr. Cook and the members of the Personal Property Class, under section 9625(c)(2) of the UCC.

**COUNT IV**
**Sale Notice Class v. Santander**
*Failure to Issue Sale Notices*
**Uniform Commercial Code**
**13 Pa.C.S. § 9625**

118.    The preceding paragraphs are incorporated by reference.

119.    Santander failed to issue sale notices to the members of the Sale Notice Class via Certified Mail or personal delivery, in violation of the UCC.  13 Pa.C.S. §§ 9611(b), 9615, and 9616.

120.    That same conduct violated the UCC *in pari materia* with the MVSFA, which unequivocally required the issuance of such notices immediately, via certified mail or personal delivery.  13 Pa.C.S. §§ 9611(b); 12 Pa.C.S. § 6254(a).

**COUNT V**
*Improper Fees Class*
**UCC *in Pari Materia* with MVSFA**
**13 Pa. C.S. §§ 9610(b); 12 Pa. C.S. § 6245**

121.    The preceding paragraphs are incorporated by reference.

122.    By imposing Improper Fees upon its borrowers' payments, Santander violated the UCC directly and *in pari materia* with the MVSFA.

123.    Santander charged late fees for payments made within 10 days of their scheduled due dates in amounts exceeding 2% of the amounts of the tardy payment (or, for heavy duty commercial vehicles, 4%.  12 Pa.C.S. § 6245(b).

124.    Santander systematically charged its borrowers for expenses at amounts greater than it actually incurred or expected to incur.  12 Pa.C.S. § 6245(b).

WHEREFORE, the proposed representative plaintiff, Mr. Cook, on his own behalf and on behalf of the proposed class and subclasses of similarly situated plaintiffs, respectfully requests that this Court (i) authorize Mr. Cook to serve as representative plaintiff; (ii) certify the proposed

class and subclasses; (iii) authorize Robleto Kuruce to represent that certified class; and (iv) enter

judgment against the Defendants.

Dated: August 16, 2023                                    Respectfully Submitted,


                                                         /s/ Renee M. Kuruce
                                                        Aurelius P. Robleto
                                                        PA I.D. No. 94633
                                                        Renée M. Kuruce
                                                        PA ID No. 314691
                                                        ROBLETO KURUCE, PLLC
                                                        6101 Penn Avenue, Suite 201
                                                        Pittsburgh, PA 15206
                                                        Tel:    (412) 925-8194
                                                        Fax:    (412) 346-1035
                                                        apr@robletolaw.com
                                                        rmk@robletolaw.com